Division. Oral argument. Good morning, your honors. May it please the court. My name is Michelle Berry and I represent the appellant Christopher Smith in this appeal of his denied petition for writ of habeas corpus. I would like to reserve three minutes for rebuttal. Thank you. Your honors, the bottom line in this case is that Chris's case should be reviewed on the merits. It has been caught up in a rabbit hole of procedural defaults through no fault of his own. But when the merits are reached, relief is clearly warranted. And the majority of the briefing is spent on a very complex procedural discussions. But today I would like to focus on the Schlup Actual Innocence Gateway because it's very clear that Chris does satisfy the standards. So I'd like to focus on that and then move into a discussion of the merits on his two strongest claims, grounds one and two, the Brady violation and the variance between the evidence presented in theory of case and grounds for conviction. You were trial counsel, is that correct? Yes, I was. Do you have any further information or can you direct us to where in the record it shows what the court said about denying the new trial? Yes, in page IDs 1580 to 1586, this is in the trial transcript, the court makes some comments. This is document 12-11 and this is where the court arguably changed the basis for his conviction. At the trial level. But this is during the trial, at the close of the trial? This is after the trial and the motion for new trial. He makes comments after he's heard testimony from the defense expert Dr. Julie Heinegg who testified about the undisclosed lab notes from the state and gave testimony. And that's all though, there's no additional entry on the record? No, there was a summary denial and then the court makes the following statements. I have no doubt that both of these guys were involved in this. The testimony of the DNA expert based on the undisclosed lab notes is that Christopher Smith wasn't the one who committed the robbery, but a witness put him right there in the car. There's a lot of evidence that puts Chris Smith involved in this. I have no doubt that both of these guys were involved in this and committing a lot of robberies. And again that's at page IDs 1580-1586. And then he goes on to issue a summary denial. And what I think is very important is that the Supreme Court and Colin v. Penholster, which is a Thomas Scalia Roberts Kennedy opinion joined by different justices at different parts, but one of the thrusts of the Supreme Court in that case is that we can and should use the record that I think those statements by the trial court are very important, not just for the Shloop argument, but also the Brady claim and the variance claim, grounds one and ground two. Because if you have a trial judge basically changing the basis for his conviction to a completely unproven theory, it's very important to note that the state in this case rested its theory entirely on Chris Smith being the gunman. They put forth no evidence, in fact they put forth evidence that he was not the driver, that he was not the accomplice. And as we know from the DNA, he was not the gunman. His DNA was completely excluded on all pieces of the costume. We learned from the DNA expert that his DNA was on the wig and the t-shirt and the sunglasses from wearing them, not from briefly touching them like the trial court originally concluded. He made comments to that effect too on the record that he originally believed that Chris Smith's DNA was on the wig and the t-shirt because he briefly, or that Charles Allen's DNA was on the wig and the t-shirt because he briefly touched them. And that's at page IDs 1431 to 1432. And that's in the actual trial. But what we learn from the Brady material, the undisclosed lab notes and the accompanying DNA expert's testimony, Dr. Heinig, is that his DNA was heavily present on the wig and the t-shirt, showing that he wore those items. And then the new evidence, as it pertains to Shloop, was DNA testing conducted on the sunglasses that originally had come back inconclusive. DNA testing then came back on the sunglasses, and again to Charles Allen, completely excluded Chris Smith. So we have everything pointing to Charles Allen, nothing pointing to Chris Smith. This is all new evidence. I want to back up just a minute and talk about the sort of accomplice liability theory. You said just in your statement a little bit ago that the state affirmatively put on evidence that Smith was not the accomplice. Can you talk to me about that? Yes, absolutely. The state's theory of the case from the very start to the finish was that Christopher Smith was the gunman. They put all their eggs in this one basket, and as it turns out, the DNA proves that that is not the case. It's true that in many instances a prosecutor will have a case against more than one person working together to commit a crime, and any of those people could be convicted for the principal offense if the prosecutor does not know their role in it or it's just a group effort. But here, the state went out of its way to put on evidence that he was not the passenger seat, not the driver seat. He said that the gunman came out, got in the passenger seat. That witness did say they were both there. Well, he identified Christopher Smith as the gunman. Right. And Charles Allen, which was another, there really were only two witnesses against Christopher Smith, and that was Thomas Moore and Charles Allen. And both of them put forth evidence that Charles Allen was the driver and that Christopher Smith was the gunman. And the state put forth no other evidence. So the evidence that they did put forth was Chris Smith is not the driver. He is the gunman. And then we have this DNA evidence, some of which is new to satisfy the SLUIP standard, that Charles Allen is the costume-wearing gunman, that the trial court's original theory that maybe Chris just got lucky and that Charles Allen briefly touched these items, that was also eviscerated by the unrefuted testimony of Dr. Heinegg and the motion for new trial based on the Brady violation. And that's all just to focus on the DNA evidence. There are so many other pieces of evidence that point to Charles Allen as the gunman. There's fingerprints. They all exclude Christopher Smith, come up Charles Allen. On some basis. What's your remedy? That Christopher Smith's conviction should be overturned. He was convicted solely on the incorrect theory of being... No remand for an evidentiary hearing or consideration of the points you make? No, Your Honor. The remedy here would be that his conviction should be overturned. And one very important point I'd like to make is that the district court, in incorrectly deciding the SLUIP standard, used the wrong standard. And this actually is a clear-cut abuse of discretion. The district court applied a definitive standard, where the correct standard is a probabilistic standard. The district court determined just that no reasonable juror would Is it more likely than not that no reasonable juror would convict based on the new evidence considered with all of the evidence? Why wouldn't it be necessary, once you have established through SLUIP or through a Brady violation, that you have a right to have that heard on the merits? Why wouldn't it be the appropriate solution to send that back down and have it heard on the merits? Well, Your Honor, because... Well, starting off with the SLUIP standard, because the district court applied the wrong standard, and that is abuse of discretion, this court is able to apply a de novo review on that and just determine that based on this court's judgment. And I'll... Isn't the usual procedure when a court applies the wrong standard to send it back down and order it be considered and taken up on the merits on the correct standard? I think that has happened, but I think the Court of Appeals definitely has the discretion to make a de novo review here and make its own determination. In fact, the... But even if we did that, SLUIP is just a gateway to present your underlying claims. So somebody would still need to evaluate all the claims that the district court didn't evaluate on for example. Yeah, the Brady claim and the variance claim are... But you're not asking this court to do that and just order relief for your client, or you are? I think that this court has the discretion to do that and apply a de novo review, because I think that it's arguable that there were decisions on the merits based on these. The Supreme Court has said in Harrington, when there is a summary denial, which Chris had many summary denials, unless there is a specific citation to a procedural rule, that's to be assumed to be a decision on the merits. And so I think that there's an arguable basis to say that these claims did have a merits review, he just lost on them, and this court is able to make a de novo determination on those claims on the merits. And I certainly on the... You can see because generally that there is a remand because we didn't see the testimony, we are not judges of credibility of witnesses. If what matters is that the correct standard be applied, wouldn't we say, here's the correct standard, now you, as a trial court, exercise the normative duties of a trial court and take up the entire record and make the first determination on the correct standard? I do think that that's a possible remedy, but I also do think that this court has the discretion to apply the proper SHLUIP standard and make a de novo review on SHLUIP as well as the merits of the two principal claims. Actual innocence is your only basis then, am I correct? For the SHLUIP gateway to getting to the merits, that is what we would definitely focus on because in addition to the DNA evidence, there are so many things. The only thing that we actually need is to meet, is it more likely than not that any reasonable juror would find reasonable doubt. But SHLUIP is an extremely demanding standard, right? So SHLUIP is not supposed to be a path for reopening long final convictions, right? It is supposed to be an extraordinary case. So here we have evidence that was presented to the trial court. The evidence that was included, and that Alan was included, and all we have here is further evidence to support that claim. It's definitely more evidence that there were many loci on the wig and on the t-shirt, but how is that extraordinary? I see my time has expired, but to answer your question, it is because dealing with the sunglasses, there is no basis in the record for Charles Allen's DNA to be on those, whereas previously with the wig and the t-shirt, you could make some far-fetched claims. Can I ask one more question? So you were trial counsel, you had the sunglasses, correct? The sunglasses were not hidden from you. You tested them well after trial. Why didn't you test them at trial? They were tested. The state tested all of that at our request and it came back inconclusive. And then when the Brady violation occurred and we obtained the requested lab notes that were suppressed from us, the expert that I had review those also retested all the items and came up with Charles Allen's DNA on the sunglasses. Yeah, but there's no reason you couldn't have. If you were suspicious at trial of the government's DNA testing, you could have tested them yourself at the time of trial. Otherwise, we're going to have, I mean, if SHLOOP is that, then what we're saying is trial counsel has an incentive to not test certain things. I mean, if you had tested them yourself, maybe your client would have been on the sunglasses and that would have been bad for you. So we don't want to create sandbagging incentives here. No, absolutely not. But we actually were not suspicious at all of the DNA tests and we were thrilled with it. And we felt no need to retest when Charles Allen had been identified on the key pieces of the costume and Chris Smith was already excluded. We had Charles Allen's fingerprints. We had Charles Allen on recordings. So I understand that. I just don't understand why SHLOOP would be available for you to do a test that you had no incentive to do then, but then you decide, oh, well, maybe I'll retest them later. Well, this all occurred because the state didn't disclose the lab notes that were requested not once, not twice, but three times and with a motion to compare. Yeah, I'll let it go. But I understand that. But the lab notes didn't reveal anything about the inaccuracy of the government's initial test to make you think, oh, well, they messed up the initial test, so now I need to retest them and also test the sunglasses. Well, no, again, we were thrilled with the results of the DNA testing and felt confident. And we had recordings of Charles Allen talking in first person about the robbery. We had another witness who said Charles Allen confessed. We felt confident with this and confident that the trial court was going to make the right decision. We were told that those lab notes didn't exist. But I understand that claim. Yeah. And then when the state did say, oh, we do have these lab notes and we had an expert review them and her unrefuted explanation of those lab notes disclosed that the trial court's theory for convicting also is blown out of the water, you know, we have that. That's the Brady violation. But the sunglasses, that's new evidence that goes to SHLU. We weren't saying that the sunglasses was a Brady violation. But again, just to be clear, we didn't have a reason to question the DNA testing at the trial level because it came back in our favor and any reasonable fact finder would not have convicted Smith to begin with based on this evidence. One other question. If we don't find for you on the actual innocence claim, and if we also find that the second Rule 26B application on which you rely was itself procedurally defaulted, I assume your position is that we then look to the first Rule 26B application as a way to seek through the Brady claim. Is that correct? Yes. That would be an alternative. But with all respect, and I'm aware of the court's decision in McLean v. Kelly where there's a long analysis of 26B and ineffective assistance of counsel dealing with Gunner and Martinez and all of those. I'm aware of that. But with all respect, I don't think this court needs to even get into that because the SHLU claim is so strong here with the new DNA evidence combined with all. And just to touch on your previous point about this court making credibility determinations, the Supreme Court actually said in House v. Bell that when the SHLU standard is being reviewed, that the reviewing court can make credibility determinations, that you are not stuck with the credibility determinations made at the trial level. So that's another thing to keep in mind because there's a very helpful Fifth Circuit case, U.S. v. Fasano, that was presented actually to the trial court. It's a 2009 case out of the Fifth Circuit where in adjudicating a denied request for DNA testing under the Innocence Protection Act, they faced what was seemingly a very strong case against the defendant seeking DNA testing. It's very similar to Krista his vehicle placed at the scene, surveillance camera footage, a bank note given to the teller, the demand note with his fingerprints on it. And in light of all of this, the Fifth Circuit ordered that there should be DNA testing. And the important point here is the quotes given by the Fifth Circuit. They said, if the DNA excludes the defendant on the pieces of the robber's clothing that were recovered, which is a hat, sunglasses and t-shirt, eerily similar, if the DNA excludes the defendant and comes back to another person's DNA on those items, there's a reasonable probability that the defendant didn't commit the robbery. The DNA has forced the legal community to accept the reality that eyewitness testimony is weak. And here what we had was original DNA testing that already excluded Smith. The trial court latched on to some far-fetched theories that maybe through touch DNA, Chris got lucky and Charles, his DNA transferred through touch DNA. But now we have new DNA evidence, new DNA theory by the defense expert. All of this is unrefuted. There's no explanation in the record for his DNA being on the sunglasses. The state didn't refute Dr. Heining's testimony. It blows the trial court's theory out of the water. And we have to accept that the eyewitness just got it wrong here. Thank you. Thank you. May it please the court, good morning. I'm Bill Lamb. I represent the warden in this case. I came here actually to discuss procedural default and I'm going to do that. But since we're starting off on DNA, I would like to clarify that issue first. If you look at the defense theory of the case, that because to take the wig, that because the DNA of Alan was on the wig a lot, that therefore Alan, only Alan, could have committed the robbery wearing the DNA. And because Smith's DNA was not on the wig, that therefore Smith could have not worn the DNA and committed the robbery. And I'll cite you two parts of her testimony. Transcript 1557, page ID 1124. When she's presented with all these hypotheticals, she said, well, if I were on the prosecution side, we'd have to discuss all this. But she balks. She never buys into the defense theory of the case altogether. And at transcript 1559, page ID 1126, she says, I am unable to comment on if Chris Smith put this on, you know, for sure would his DNA be on there. So read her testimony carefully and you will see that she never buys into all of the ramifications that the defense has presented concerning this DNA evidence. But wasn't her testimony that the number of loci that intersected inside the wig indicated that Alan had actually worn it? Correct. But DNA never tells you time. Alan, let's suppose, owned the DNA, owned the wig, wore it a lot of times. That doesn't say that Alan and only Alan wore the wig at the time of the robbery. Doesn't do that. DNA never does that. What about his testimony, that he had never had it or seen it or? His testimony, yes. There were two eyewitnesses. Thomas Moore was one and Alan is the other. Alan is a rather unreliable witness, but he does say that he drove the vehicle. That's basically his testimony. If you're looking at actual innocence. He does say that he didn't wear the wig. I don't remember, frankly. I think he said, I was in the vehicle and Smith jumped in the vehicle and he told me to go and we drove off. I think that's what he said. That was his contribution to the case. Now I'd like to come back to what you mentioned, Judge Larson. On actual innocence, if the testimony at trial was the same, that the DNA on the wig was attributable to Alan but not Smith, what then is new here that would permit us to invoke Schlupf v. Dillow? It doesn't matter whether it's newly discovered or newly presented. It's simply not new. Therefore, the Schlupf v. Dillow actual innocence exception would not apply. There are other reasons for that. I will get to that shortly. You had two items. You had the information that was on about the wig itself and the fact that I'm trying to remember that the DNA profile on the wig had one in 3.44 million people would have matched that DNA profile. That is an important difference. Then you have the sunglasses, which your opposing counsel notes is entirely new. I don't know quite how that fits. Again, DNA doesn't tell you the time that the DNA is deposited. It doesn't conclusively prove that any particular item was linked to a particular time of the robbery would be my answer to that. Is it your contention that, I mean, do you concede that the sunglasses are new evidence within the meaning of Schlupf v. Dillow? Because, I mean, yes, they're new in the sense that their DNA was not tested or was tested, but we now have a new test that was done. But defense counsel could have tested those sunglasses. The sunglasses weren't hidden by the state. She had physical access to them or could have requested physical access to them. So I guess I'm wondering why they are new evidence in any sense that Schlupf v. Dillow would consider them to be new. I agree. I'm not sure how I see that they're particularly incriminating or how they particularly relate to the robbery in terms of the time that the robbery was committed. I may not be understanding your question. Well, I think defense counsel's theory is they're exculpating because they have Allen's DNA on them and not Smith's. And that was not presented, that fact was not presented at trial. And so it adds to the defense narrative that they got the wrong guy. So that's why they would say it matters for actual innocence. Well, it looks like it's cumulative to me of the Whig testimony. May I make a transition to procedural default, if you don't mind? I have a question on your briefing on the burden of proof. You note that Smith has the burden of showing, I want to be sure I'm getting it correct, has the burden of showing by clear and convincing evidence that no reasonable juror would have found him guilty. That's in your brief. But isn't that the very argument that the Supreme Court rejected in house? That's not the standard, is it, counsel? I think the standard is by preponderance of the evidence, which always rests on the petitioner. The petitioner has to show by preponderance. Now, isn't in this case the standard that the petitioner must show that it is more likely than not that any reasonable juror would have had a reasonable doubt? Isn't that the Sloop standard? It is, but I interpret that language as burden shifting language to describe that as preponderance of the evidence that no reasonable juror would have found the appellant guilty beyond a reasonable doubt. Well, then how do you explain the more likely than not language? I think that the more likely than not language is expressing the preponderance of the evidence standard. Well, don't you think you have to apply the words that the Supreme Court used? I agree you do. That's fair. But may I discuss procedural default? The best way to get into this procedural default question, and there are very complicated, but I think it's unnecessarily complicated, I would like to suggest that there are three ways not to decide this case as a way of explaining why procedural default rules out all of the claims except claim seven. In the post-conviction petition, Exhibit 50, the State Court of Appeals applied the timeliness rule, ID 2768. Smith wants you to create what Smith calls an unavoidable prevented vehicle rule, which is taken from Ohio's revised code, 2953.23A1A. Well, the State Court did not apply its own exception to the timeliness rule, so on what basis does this court say, you State Court, apply that exception? Was there a Brady violation in this case? No, the State Court said not because there was nothing material in the DNA evidence. There was nothing material in the withheld notes? Correct. Because it was simply cumulative, or it wouldn't have mattered. It wouldn't be reasonably probable that any fact finder, and we have a trial court here, but that any fact finder would, it would have made a difference to any fact finder that there were multiple loci. It doesn't make a difference, yes. Didn't it make a difference to this fact finder? No, Your Honor. Because when the court responded to the motion for a new trial, his suggestion was distinct from what the claims or the argument or the discussion he had had on the record during the trial itself. So it seems to me you've got the very fact finder saying, well, if this is true, then here's why I'm not granting a new trial. I thought he said, and correct me if I'm wrong, that both of these people were involved, Smith and Ackerman. Well, that's distinct from, I know the eyewitness and the information that's in the record tells me that Mr. Smith is the one who committed the robbery. And so what if his DNA is not in some way on this wig? It might just not have shown up, and Mr. Allen's DNA, he could have just touched it. But the new evidence said no, that that's not possible. So why isn't that just a game changer? No, the new evidence did not show that it mattered at all as to the amount of DNA on the wig. I'm sorry, say that again. The DNA evidence from Julie Heinig doesn't matter. And why is that? Because it doesn't matter how much DNA is on the wig from Allen. It doesn't prove Allen committed the robbery, and only Allen committed the robbery. And because Smith's DNA is not on the wig, it doesn't prove that Smith did not commit the robbery, could have worn it casually, and their own testimony from their own witness says so. So all of that is a red herring, it doesn't matter. Is this a question of our interpretation of what the experts said in specifying the loci on the wig and Allen's, the exclusion data, Allen's possibility of touching the wig or the sunglasses? Doesn't your argument rely on that very assumption that the expert does not say that this information indicates that Allen wore the wig? The expert does not say anything that contradicts the state's testimony at trial that matters. Absolutely not. And it's not a question of interpretation, just look at her testimony. She balks. She never buys into the defense theory of the case regarding DNA. And you think it does not change the conclusions of the court in this case based on Mr. Allen's testimony that I did not wear that wig, I did not have that wig, I did not wear those sunglasses? It doesn't matter, Your Honor. Mr. Allen is not a particularly reliable witness, but what you have here as far as actual innocence is concerned, you have a good reliable witness, Mr. Thomas Moore. And what Allen says or may not... Well, you have an eyewitness, an honest and reliable man. Nobody disputes that, but there's a great deal of expert testimony about the problems with eyewitness identification. And that's why DNA is so significant. DNA is not significant in this case because the state's, the expert for the defense doesn't add anything to the case that wasn't already a trial. And the sunglasses don't qualify in your estimation why? They don't, because it's cumulative. Because it's cumulative of what? We have sunglasses that the testimony says it's inconclusive, there is no DNA on these sunglasses and now we have sunglasses with the DNA of the witness against the defendant. Why is, how is that cumulative? That doesn't show that Allen, only Allen, wore sunglasses to commit the robbery. It doesn't show that Smith did not wear the sunglasses to commit the robbery. Where you have DNA and time, the two concepts don't mesh. I'm struggling with that because it seems to me that that could be an excuse for any time there's effective DNA testing. You think of the other cases, I think the case that you're opposing counsel mentioned where the defendant had all along declared that he was not the rapist, but there was all sorts of evidence around him. And then he said he thought, their theory was it was the husband, and then the DNA evidence came back and the husband's semen was on some of the clothing. Under your argument, the answer would be, well, he was the husband, it could have been there anyway, it doesn't matter. But the court didn't see it that way. Didn't the court think that that DNA evidence made a difference? Your Honor, we spent minutes and minutes and minutes talking about things that don't matter. We've never gotten to a particular point. No, no, give me, I would like an answer to my question about why the DNA evidence in the scenario in this other case wouldn't be susceptible of your argument and why that might show that your argument is perhaps not recognizing the significance of DNA testimony in an actual innocence claim. The DNA testimony in this case does not add anything new to what was testified at trial. Therefore you don't get to the Shook v. Delo actual innocence gateway. I'll take that as your response. I'm sorry, Your Honor, that's the best I can do. I see my time is almost up, I have 30 seconds to talk about procedural default. The proposition is that Smith, for the application to reopen, Smith wants you to apply an exception in the rule that the state court did not apply. You can't do that. And as for her suggestion, Smith's suggestion in the reply brief that you assume that with a different appellate counsel, different appellate counsel can apply for multiple applications for reopening, the Supreme Court has said in Morgan v. Eads that is cited in Twyford, they don't follow that rule. Would you agree with the statement that all of the claims are procedurally defaulted with the exception of the actual innocence in the Brady claim? No, Your Honor. There's no actual innocence in this case. It's the seventh claim, I think, the seventh claim that is not procedurally defaulted. And I said that in my brief, I believe. But every other claim is procedurally defaulted. The seventh claim is the ineffective assistance of appellate counsel for failing to raise the Brady claim. Right. I'm rather, excuse me if I may say so, I'm going to argue procedural default because all these claims are procedurally defaulted and it's very clear. Except that one. Except that one. Except that one. I regret that I'm not able to get to that. Do you have a question? Thank you. Yes, Your Honor. Thank you. Your Honors, I would just like to emphasize that, to come back to Judge Larson's question and to emphasize Judge Stranch's emphasis on the DNA. The arguments presented by my opposing counsel trying to explain away the DNA are just not sound and not reasonable. We're asking for reasonableness tests here and if this court were to adopt my opposing counsel's position, it would mean that DNA testing just has no meaning, no significance. And that can't be the case because it's objective evidence that doesn't lie and doesn't have its eyes deceived like eyewitnesses often do. I would like to point the court to page IDs 2382 to 2389, which discusses the second ground for relief in the traverse. And it has a good example that might be helpful. You're talking to, I didn't catch that. What are you citing to us? It's page IDs number 2382 to 2389 and it's regarding the second ground for relief. And it has an example regarding the variance issue that I think will be helpful to answer Judge Larson's question about why, because evidence was presented that Chris Smith was not the driver and we have all this objective evidence that he was not the gunman, why relief is granted on that basis. Another point that I think is very important with connection to the DNA evidence that we can't lose sight of is that Chris Smith requested this DNA testing. He requested it at the outset and as soon as his parole officer contacted him, his first wearing, he said, good, run the test. I thought this was rebuttal. Yeah, your honor, I was responding to opposing counsel's argument about the DNA not really mattering and I think it's important to keep in mind that it's not just luck that his DNA wasn't there. Counsel was trying to suggest that there was some sort of timing element. If you ever touch, let alone wear something, you can't be confident enough to say, run the test. I know my DNA is not going to be on it. He made multiple requests. He pleaded for that DNA testing and no, we did not retest the state's evidence at that time because we didn't need to. He's an indigent defendant and we used those resources to hire a private investigator who ended up recording Charles Allen talking first person about the robbery and then again on the jail line saying he was angry about being wired up where he talked about committing the robbery in first person. So you have to think about the resources that an indigent defendant has as well. We didn't need to retest DNA evidence at the time when we already had the results that we sought and the retesting occurred because of the Brady violation. Are there any additional questions? Thank you counsel. Thank you both for your arguments and your briefing. You may call the next case.